THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHERYL DUTTON, Defendant-Appellant.

Fifth District    No. 5—01—0963

Opinion filed July 31, 2003.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James Creason, State's Attorney, of Salem (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The defendant, Cheryl Dutton, was charged with attempted first-degree murder (720 ILCS 5/8—4(a) (West 2000)) and aggravated battery (720 ILCS 5/12—4(b)(1) (West 2000)) after she stabbed her husband with a knife. Negotiations between the State and the defendant led to an agreement in which the defendant was found not guilty by reason of insanity. Thereafter, a dispositional hearing was held, during which defense counsel stipulated to a report which concluded that the defendant required inpatient treatment. The trial court found the defendant subject to involuntary commitment and committed her to the Department of Human Services (Department) for a period not to exceed 30 years. The defendant now appeals from the order of the circuit court of Marion County finding her subject to involuntary commitment. On appeal, the defendant contends that her attorney abandoned his role as her advocate and instead performed as a guardian *ad litem*. The defendant asks us to reverse the commitment order of the trial court and remand for further proceedings. We affirm.

## FACTS

On January 27, 2001, one of the defendant's neighbors called the Marion County sheriff's department to notify the police that the

defendant's husband, Richard, had been stabbed and was bleeding profusely. When deputies arrived at the neighbor's residence, Richard informed them that the defendant had stabbed him. The deputies then proceeded to the Dutton residence, where they spoke with the defendant.

The defendant told the police that she and her husband had argued the night before and that she had gone home alone. The defendant said she took a butcher knife with her to bed as was her habit. During the night, someone entered her bedroom. The defendant thought it was an attacker, so she stabbed that person several times before realizing it was her husband.

The defendant's husband received medical treatment for his injuries and was later interviewed by law enforcement officials. He told officers that when he arrived home, he did not see the defendant in the bedroom. However, when he turned around, he saw her standing in the doorway with a butcher knife. The defendant told him, "Prepare to meet your maker." She then stabbed him several times with the butcher knife.

On February 16, 2001, a bill of indictment was entered. It charged the defendant with attempted first-degree murder and aggravated battery. Defense counsel entered his appearance and requested that the defendant undergo a psychiatric examination to determine whether she was fit to stand trial. Dr. S.D. Parwatikar, a psychiatrist at Alton Mental Health Center, evaluated the defendant. During the interview, the defendant told Dr. Parwatikar a different story than what she had originally told the police.

The defendant told Dr. Parwatikar that she went to sleep, woke up, and found her husband in critical condition with a knife in his stomach. She said she called 9-1-1 to report that she had stabbed her husband, but the dispatcher only laughed at her. Because she felt she was not being taken seriously, she then called the county police, who also laughed at her. She said that while she was on the phone, her husband went to the neighbor's house. The defendant claimed to have no recollection of whether or not she stabbed her husband. She told Dr. Parwatikar that since her 19-year-old son had died five years previously, she has been depressed. She explained that on the night of the stabbing, she had a dream that her youngest son's father was beating her oldest son. She said that in her dream she was using a knife to prevent him from beating her son but that in reality she must have been swinging the knife at her husband.

Dr. Parwatikar found that while the defendant was fit to stand trial, she might have a valid insanity defense. Dr. Parwatikar specifically noted as follows:

"If the given circumstances and the sequence of events is accurate, then it is this writer's opinion[,] within a reasonable degree of psychiatric certainty[,] that at the time of the criminal conduct, she lacked the capacity to appreciate the criminality of it due to the presence of mental disease."

Dr. Parwatikar diagnosed the defendant with posttraumatic stress disorder, dysthymic disorder, alcohol abuse, and dependent personality disorder.

After receiving Dr. Parwatikar's report, the parties entered into a plea agreement. The defendant agreed to plead not guilty by reason of insanity and to be referred to the Department for an evaluation to determine the type of treatment necessary. The defendant was admonished that the Department could find outpatient treatment sufficient to treat her or that the Department could determine that long-term involuntary commitment to a mental health facility was warranted. While the record reflects that the defendant was somewhat confused, it also reflects that the trial court went over the consequences of the plea with the defendant at least three times and that the defendant ultimately stated that it was her desire to plead not guilty by reason of insanity.

The trial court entered a finding of not guilty by reason of insanity and sent the defendant to the Alton Mental Health Center for an evaluation. Dr. Muddasani Reddy filed a report that concluded: "It is the opinion of the treatment team of Alton Mental Health Center that [the defendant] is subject to involuntary admission and in need of inpatient services. [The defendant] is appropriately placed in a moderately secure forensic facility at this time." The report lists the defendant's long history of mental illness, including depression, anxiety, and difficulty relating to others. It notes the defendant's adolescent trauma, including physical and emotional abuse, as well as later alcohol and prescription drug abuse. The report lists the defendant's history of violent and dangerous behavior. The report also notes, "[The defendant] tends to repeatedly insist on being discharged to the community, in spite of repeated counseling regarding the legal issues involved in her case."

After receiving the evaluation, the trial court conducted a hearing to determine whether the defendant was subject to involuntary admission. The parties stipulated to the report signed by Dr. Muddasani. Defense counsel stated that while the defendant did not want to be committed, it was in her "best interests" that she be committed to the Department. The defendant was allowed an opportunity to speak. The defendant told the trial court that she did not want to be "locked up" and felt she could progress and get a handle on her mental illness by

staying on her medication and continuing her counseling on an outpatient basis. The defendant explained that she wanted to be able to go to her son's gravesite and deal with her grief, which is what she believes triggered her disease. After the hearing, the trial court found that the defendant was subject to involuntary commitment, and the court committed the defendant to the Department for a period not to exceed 30 years. The defendant filed a timely notice of appeal.

## ANALYSIS

The defendant insists that her attorney failed to act as her advocate and instead took on the role of guardian *ad litem* when he agreed that it was in her "best interests" to be involuntarily committed, despite his knowledge that the defendant requested a less restrictive treatment plan. In support of her contention, the defendant relies on *In re Jones*, 318 Ill. App. 3d 1023, 743 N.E.2d 1090 (2001). In that case, we ruled that patients facing involuntary commitment or the administration of psychotropic medication have a statutory right to counsel pursuant to sections 3—805 and 2—107.1 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3—805, 2—107.1 (West 1998)), respectively, and that, thus, it was improper to appoint guardians *ad litem* to represent them, rather than counsel to advocate on their behalf.

In *In re Jones*, we specifically stated: "While a guardian *ad litem* may properly determine that psychotropic medication is in the respondent's best interest, an attorney is necessary to advocate on the respondent's behalf. The roles necessarily conflict with one another." *In re Jones*, 318 Ill. App. 3d at 1027, 743 N.E.2d at 1093. We also found that even though the guardians appointed to represent the respondents were licensed to practice law, the trial court's appointment of guardians *ad litem*, rather than advocates, failed to strictly comply with the requirement that a person subject to involuntary commitment or the involuntary administration of psychotropic medication must be represented by an attorney. *In re Jones*, 318 Ill. App. 3d at 1027, 743 N.E.2d at 1094. We continue to abide by our holding in *In re Jones*, but we find the defendant's reliance on *In re Jones* misplaced. Whereas *In re Jones* is a mental health case, the instant case is a criminal case.

Here, the trial court did not appoint a guardian *ad litem* to represent the defendant. The defendant was represented by an attorney who entered his appearance on behalf of the defendant. The record shows that on January 31, 2001, attorney Michael McHaney entered his appearance after the defendant had been charged with attempted murder and aggravated battery. Thereafter, defense counsel

requested that the defendant undergo a psychiatric examination to determine whether she was fit to stand trial. Dr. Parwatikar examined the defendant for the purpose of determining fitness. Dr. Parwatikar found the defendant fit to stand trial, but he also opined that the defendant might have a valid insanity defense if the defendant's version of how the stabbing occurred proved accurate.

As pointed out in the facts portion of this opinion, the defendant's version of events changed throughout the course of the proceedings; nevertheless, defense counsel was able to negotiate a plea with the State whereby the defendant would be allowed to plead not guilty by reason of insanity and would be referred to the Department for an evaluation to determine what type of treatment was necessary. The negotiated agreement recognized that the defendant could be admitted to a long-term psychiatric facility if the psychiatric evaluation found that involuntary commitment was necessary. The defendant was carefully admonished by the trial court that long-term involuntary commitment was a distinct possibility.

■ The sixth amendment to the United States Constitution grants a criminal defendant the right to "the [a]ssistance of [c]ounsel for his defense." U.S. Const., amend. VI. The United States Supreme Court has defined the right to the assistance of counsel as the right to "the effective assistance of competent counsel." *McMann v. Richardson*, 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1449 (1970). Of all the rights an accused has, the right to be represented by counsel is by far the most important because it affects the ability to assert any other rights the accused may have. See *United States v. Cronic*, 466 U.S. 648, 654, 80 L. Ed. 2d 657, 664, 104 S. Ct. 2039, 2044 (1984).

■ The general rule is that to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) counsel's substandard representation so prejudiced the defendant that it denied him or her a fair trial. *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255 (1984), citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To show actual prejudice, a defendant must establish the following: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

■ In the instant case, we find that the defendant received more than just merely effective assistance by defense counsel. After a careful consideration of the record before us, we agree with the State that

defense counsel deserves praise, rather than criticism, for negotiating an agreement favorable to the defendant and making sure the agreement was enforced. As previously discussed, Dr. Parwatikar's opinion that the defendant might have a valid insanity defense was premised on the fact that the defendant's version of events would withstand scrutiny. The fact that the defendant gave a differing version of the events indicates that Dr. Parwatikar's opinion on the issue of insanity at the time of the offense might very well have changed. Had the case gone to trial, the State would certainly have been able to obtain a conviction due to all the incriminating evidence against the defendant. Accordingly, the defendant cannot show prejudice, because her defense attorney negotiated a plea whereby the defendant was actually acquitted of the charges against her on the grounds of insanity.

While the defendant made it clear on the day the trial court committed her to the Department that she did not want to be confined to a mental health center, such an outcome was not available to the defendant. The negotiated plea called for the defendant to be committed to a mental health center if the psychiatric evaluation recommended that she be committed. Given the defendant's prior convictions, history of mental illness, and history of violence, a recommendation that the defendant receive outpatient treatment was highly improbable, and the defendant cannot show she was prejudiced by defense counsel's comment that being involuntarily admitted was in the defendant's "best interests."

The parties agreed to abide by the recommendation in the psychiatric report and called for the trial court to act in accordance with the report. Under the circumstances, we find that the defendant received the effective assistance of counsel, and we disagree with the defendant's contention that the trial court's commitment order must be reversed and the cause remanded for further proceedings.

## CONCLUSION

For the foregoing reasons, the order of the circuit court of Marion County is hereby affirmed.

Affirmed.

MAAG and DONOVAN, JJ., concur.